STEVE M. REEVES *et al.*, Plaintiffs-Appellants, v. BRNO, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—84—0984

Opinion filed December 4, 1985.

Douglas W. Graham, of Chicago, for appellants.

Charles M. May and Markham M. Jeep, both of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiffs, Steve M. Reeves and Mary Reeves, brought an action under the Liquor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 135) against defendants, Brno, Inc., and Josef Smerda, seeking in count I of plaintiffs' second-amended complaint damages for personal injuries received by Steve Reeves at defendants' tavern, the Fireside Inn. Plaintiffs alleged that one of defendants' patrons became intoxicated at the tavern and subsequently injured Steve Reeves. Plaintiffs alleged in count II of the complaint that as a result of the injuries to her husband, Steve, Mary Reeves and her minor son were injured in their means of support. At a jury trial the jury found against both plaintiffs and for the defendants. In answering a special interrogatory, the jury found plaintiff Steve Reeves subject to the defense of complicity.

In this court plaintiffs present two main issues: (1) whether the principle of comparative fault should apply in dramshop cases, thereby permitting plaintiff Steve Reeves to recover in proportion to his degree of fault in causing the intoxication of the intoxicant who injured him; and (2) whether the trial court erred in allowing the jury to receive and consider certain allegedly improper and prejudicial evidence which went to the issue of proximate cause.

At the jury trial, plaintiff Mary Reeves testified that on the date

of her husband's injury, March 16, 1981, she proceeded to the Fireside Inn after learning that her husband had been injured at the bar. Upon her arrival at the tavern, the witness noted that her husband's head was bleeding. When she asked him what had happened, he responded, "Don't worry. All I need is a few stitches." At the hospital Steve Reeves received approximately 100 stitches and then was allowed to go home.

According to the witness, her husband suffered from severe headaches after his injury. Gradually, he began acting very strangely. Mrs. Reeves related a number of weird incidents, including one in December 1981 when her husband never arrived at work because he heard voices which told him to pull off the road. After one strange incident the witness related that she took her husband to Elgin State Hospital, where he stayed for two days before being transferred to St. Therese Hospital in Waukegan.

During cross-examination, defense counsel asked Mrs. Reeves if her husband told her of an automobile accident in which he was involved on October 28, 1981. Plaintiffs' counsel objected, pointing out at a sidebar conference that the injuries from this accident were totally unrelated to plaintiff-husband's prior injury. Defense counsel claimed that he planned to bring out the fact that the only injury was to plaintiff's foot, and the substance of his argument was to show that plaintiff had made no complaints of headaches or blurred vision to the treating doctor. Counsel inferred this was the same doctor who had previously seen plaintiff after his head injury. Subsequently, the witness' recall of the automobile accident proved to be poor, as she did not remember exactly when the accident occurred or what part of her husband's body was injured, although she was unaware of any head injury.

A discussion outside the presence of the jury also occurred regarding plaintiff Steve Reeves' use of marijuana. The court stated that defense counsel was entitled to question Mrs. Reeves regarding this use on the theory that her testimony could show that marijuana was the cause of his present mental problems. The witness' subsequent testimony showed she had observed her husband smoke marijuana approximately three times, but only a couple of "tokes" (puffs).

In response to defense counsel's questions regarding whether the witness had told Dr. Barrionuevo, a psychiatrist whom Mr. Reeves had seen in December of 1981, that her husband's heavy drinking during the past two years had caused him to be irritable, argumentative, and to become occasionally involved in barroom fights, the witness stated, "I might have." She did not believe he was an alcoholic, how-

ever.

The witness testified her husband never lost consciousness after his arrival home from the hospital on March 16, 1981.

Plaintiffs' witness, Michael Ludford, a glazer and co-worker of Steve Reeves, testified that during the three months he and plaintiff had worked together, the two of them had smoked a small joint about 15 or 20 times and that Ludford always provided the marijuana. According to Ludford, the marijuana had never affected plaintiff's behavior or job performance.

On cross-examination, Ludford related that occasionally he and Reeves drank beer together and that twice he had seen plaintiff intoxicated. About three weeks prior to December 1981, plaintiff went "crazy," and Ludford asked his boss to transfer plaintiff to small window glass work.

The testimony of plaintiff Steve Reeves reflected that he had little, if any, recall of the fight and events leading to the injury to his head and that he was unable to answer many of the questions by counsel with any degree of certainty. Plaintiff tried to recall if he had a drinking problem prior to his accident, stating that he thought he had one but that he also thought it was under control at the time of the injury. On the day of his injury plaintiff believed he had two or three beers between 2 p.m. and 4 p.m. and four, five, or six beers between 4 p.m. and 6 p.m. Plaintiff stated that he thought his assailant, Gordon Roberts, was drinking, but he was not certain. Plaintiff's recollection was unclear as to how many games of pool he and Roberts played, who won, what the altercation concerned, and how he was injured. Plaintiff stated he recalled losing consciousness and that he did not recall seeing his wife at the tavern after the accident, or talking to her.

Following the accident, plaintiff recalled seeing his family physician, Dr. Lim, although he did not remember that this visit was on the day following his head injury. Plaintiff could also not remember whether he complained of any pain to the doctor. Further, the witness had no recollection of the October 28, 1981, automobile accident he had had nor could he remember whether he had injured his ankle in that accident. Finally, when asked if he remembered telling Dr. Barrionuevo, a psychiatrist he saw in December 1981, that several years ago while residing in Arizona he had been persecuted, shot at, and given a drink containing a mind-altering drug, plaintiff replied that he did not really recall that conversation.

Dr. Shakuntala Chhabria, a neurologist, testified that Steve Reeves was seen by her at the request of Dr. Barrionuevo in January

1982 because of plaintiff's lack of control in his arms and legs, headaches, personality changes, and other behavioral problems. The doctor related that she performed a neurological examination and general physical examination of Mr. Reeves and all tests, including a CAT scan and electroencephalogram, were normal, except for an EMG and seizure studies which showed evidence of peripheral neuropathy, or nerve damage. Based on the history given to the doctor by Mrs. Reeves, the doctor opined that plaintiff's headaches, dizzy spells, personality changes, and strange behavioral episodes indicated some relationship to plaintiff's head injury. The doctor testified that if there was an underlying alcoholic problem, the head injury was not a symptom of that problem.

On cross-examination, the doctor related that an X-ray report indicated no skull fracture. Also on cross-examination, the doctor testified that all the specific neurological examinations that she performed on plaintiff were negative. She also ordered testing on plaintiff because of her concern that he possessed a post-concussion syndrome. The doctor related that the duration of an individual's unconsciousness was important in analyzing the severity of the post-concussion syndrome. According to the witness, plaintiff's wife had told the doctor that plaintiff had been unconscious for a relatively long period of time following his injury. The doctor was then asked to look at a portion of the March 16, 1981, medical record obtained from St. Therese Hospital. Counsel for plaintiff objected vigorously, stating that it was improper to bring in medical history unless it could be verified as to who made the report. The court permitted the doctor to testify regarding the report. Dr. Chhabria related that the entry "no LOC" (no loss of consciousness) appeared in the emergency room examination report.

The witness was asked if plaintiff's peripheral neuropathy problems were alcohol- and drug-related. The doctor replied that they were alcohol-related, but not drug-related, since there existed no clear history of chronic drug use. The witness admitted that alcohol and marijuana taken together could aggravate a brain disorder but there would have to be evidence of long-term use of marijuana on a daily basis to accentuate the effect of the alcohol. On redirect, the doctor explained that the use of marijuana once or twice a week would not account for Mr. Reeves' symptoms on a permanent basis.

Defense witness Gordon Roberts recounted the events leading up to the altercation outside of the tavern wherein the witness had struck the plaintiff with a fireplace log on March 16, 1981. Roberts testified that on the day in question he and the plaintiff played a num-

ber of games of pool for beer and money. Eventually, they played only for money but continued to drink. The witness was the more successful, and when Roberts had won about $160, the plaintiff accused Roberts of cheating. Twice the two scuffled in the tavern, each set-to being broken up by the bartender. Finally, the two wound up outside to settle their differences. Plaintiff knocked the witness to the ground, and while fighting on the ground Roberts struck the plaintiff in the head with the log.

A defense witness, Dr. Juan Carlos Barrionuevo, a psychiatrist, stated that on December 28, 1981, plaintiff was brought to the psychiatric unit of St. Therese Hospital in Waukegan. According to the doctor, plaintiff related that he had been having severe headaches, that he could not concentrate, and that he had been increasing the amount of his drinking. The doctor recounted that plaintiff mentioned that about four years ago he had moved to Arizona and that while there he had heard voices, thought people were persecuting him and trying to shoot him, and believed that someone had slipped mind-altering drugs into his drink. The witness stated he sent plaintiff to Dr. Chhabria for a neurological examination. The witness was then asked to assume that the plaintiff had peripheral neuropathy, as diagnosed by Dr. Chhabria, and to render an opinion based on a hypothetical situation regarding whether this condition was causally related to alcohol use. The doctor opined that based on plaintiff's history and the history of the individual in counsel's hypothetical, the symptoms of lack of feeling in plaintiff's extremities could be directly attributed to excessive use of alcohol and that the auditory and visual hallucinations could be related to alcohol use or withdrawal from alcohol use. Additionally, the doctor stated that, in his opinion, it was unlikely that there was a direct relationship between plaintiff's blunt head trauma and plaintiff's hallucinations nine months hence.

At the conclusion of all the testimony defense counsel moved for directed verdicts on both counts. The court denied both motions. Counsel for plaintiffs moved for a mistrial based on the improper introduction of the emergency room record, the reference to plaintiff Steve Reeves' use of marijuana, and the unrelated automobile accident. The court denied the motion for a mistrial.

The jury returned a verdict in favor of defendants and plaintiffs appealed.

■ In their first contention, plaintiffs argue that because the trend in Illinois is to apportion an injured party's recovery on the basis of comparative fault (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886; *Coney v. J.L.G. Industries* (1983), 97 Ill. 2d 104, 454

N.E.2d 197), this principle should also be applied in dramshop cases. However, we believe that the application of the principle of comparative fault to one guilty of complicity would serve to defeat the purpose of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 135) in controlling abuses of the liquor trade and in granting every person who is injured by these abuses a right of action.

Among these abuses are those caused by one, in the position of the plaintiff Steve Reeves, who contributes to the intoxication of another and then subsequently receives injury from the intoxicant. That such action constitutes an abuse has been well established by the case law, which holds that one who is guilty of complicity in an inebriate's intoxication should not be allowed to succeed in his action against a dramshop since he willingly and voluntarily participated to a material and substantial extent in the drinking which led to the intoxication and injury. (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 543, 372 N.E.2d 637; *Almanza v. Austino* (1980), 83 Ill. App. 3d 354, 357, 403 N.E.2d 1297; *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 813, 360 N.E.2d 108.) Nevertheless, despite the logic of these holdings and their purpose in the placing of responsibility for injuries caused by intoxication on the proper parties, the plaintiffs ask this court to determine that complicity should no longer be considered a defense in a dramshop case and that, instead, a plaintiff should be permitted some measure of recovery based on his degree of fault.

Plaintiffs have failed to provide this court with any authority showing that this principle has been applied to dramshop actions in this State or other States. Our research shows that a number of other States (*e.g.*, Iowa, Michigan, New Jersey, California) have considered the issue of comparative fault in dramshop cases with varying results. One recent case appears to have dealt with the specific issue facing this court, *i.e.*, whether a plaintiff should be permitted to recover in proportion to his degree of fault when he has been found guilty of complicity in an inebriate's intoxication.

In *Martin v. Heddinger* (Iowa 1985), 373 N.W.2d 486, a dramshop action was brought on behalf of an automobile passenger who was killed in a one-car collision after she and her companions, including the driver of the vehicle in which she was riding, spent the evening drinking at a number of different bars. After judgment was entered in favor of the dramshop operator, plaintiff appealed, raising several issues, including a contention that any complicity or assumption of risk on her part should only work to reduce, rather than to bar, her recovery.

Although the Iowa Supreme Court in *Martin v. Heddinger* (Iowa

1985), 373 N.W.2d 486, ordered a new trial on different grounds, it did find that comparative fault concepts, allowing a plaintiff's negligence to reduce rather than bar recovery, did not apply to complicity or assumption of risk defenses in a dramshop action. The Iowa Supreme Court pointed out that the concept of comparative fault is based on "fairness" as defined in terms of fault and that the aim of the Iowa Dramshop statute was not to secure fairness for drinking persons. Rather, the act designated a particular class of people who should receive protection under the act, *i.e.*, those who had not participated in the intoxicated person's intoxication by their complicity or assumption of risk.

■ We are in agreement with the Iowa Supreme Court. We believe that permitting one who is guilty of complicity in an inebriate's intoxication some measure of recovery based on his degree of fault would be not only unjust but also improper. Moreover, since the Illinois Supreme Court created the defense of complicity in dramshop cases (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 538, 543, 372 N.E.2d 637), it is the proper forum to consider whether it should no longer apply. Where the supreme court has declared the law on any point, it alone can overrule and modify its previous opinion and this court is bound by its decision. *Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863.

■ Next, defendant contends that the trial court erred in allowing the jury to receive and consider allegedly improper and prejudicial evidence. Defendant maintains that permitting Dr. Chhabria to read the written entry, "no loss of consciousness," from the emergency room record, which had not been admitted into evidence, was improper and required reversal of the jury's verdict as to count II, the loss of means of support. It is plaintiffs' argument that because Dr. Chhabria testified that loss of consciousness was important to an analysis of the severity of a head injury, the reading of this entry to the jury was prejudicial and influenced the jury's determination that plaintiff Steve Reeves' mental disabilities were more likely alcohol-related than caused by his head injury.

Defendant relies upon *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, to argue that it was proper for Dr. Chhabria to refer to the loss of consciousness notation in the emergency room report. In *Wilson,* the supreme court adopted Rules 703 and 705 of the Federal Rules of Evidence (Fed. R. Evid. 703, 705) (which permit an expert to testify to an opinion on the basis of reliable facts not in evidence and without initially disclosing those facts) and held that an expert may

base his opinion on data contained in hospital records, even if he did not compile the data and even if the records themselves were not in evidence. *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.

Plaintiffs cite the case of *Guerrero v. City of Chicago* (1983), 117 Ill. App. 3d 348, 453 N.E.2d 767, as authority for their argument that the holding in *Wilson* allows an expert to testify only to the medical aspects of hospital records and not to the historical. (117 Ill. App. 3d 348, 350-52, 453 N.E.2d 767.) Nevertheless, under the *Wilson* holding these entries, historical or medical, are to be used only for the purpose of enabling an expert to give his opinion to a hypothetical question based on facts contained in the records which are not in evidence. Here, no hypothetical question was posed in which the doctor was to assume that the history in the emergency room record indicated no loss of consciousness. Rather, the doctor was merely asked to read aloud to the jury the notation from the emergency room record stating: "No loss of consciousness. Struck in the head with a log." Thus, because no hypothetical question had preceded the reading of the entry and because the emergency room record had not been admitted into evidence, we believe it was error for the trial court to permit Dr. Chhabria to read the entry to the jury.

■ Notwithstanding this fact, we find the error was harmless because other evidence presented to the jury indicated that it was more likely than not that Steve Reeves did not lose consciousness as a result of the head injury. This evidence, plus the substantial amount of evidence supporting defendant's theory that Reeves' mental deterioration was related to the effects of alcohol rather than to the injury to his head, compels this court to conclude that the reading of the emergency room record entry to the jury was not prejudicial to the outcome of the case.

Plaintiffs also argue that it was improper for evidence of an unrelated October 1981 automobile accident to be presented to the jury since it created the inference that injuries incurred in that accident may have caused Steve Reeves' present mental problems. Plaintiffs conclude that this evidence was especially prejudicial to Mary Reeves' case because her right to recovery was dependent upon the causal connection between her husband's disability and the dramshop incident.

Little mention was actually made of this unrelated automobile accident, and the witness' recall was poor. To show that reference to the unrelated automobile accident was prejudicial, plaintiff relies upon *Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768, and *Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 410 N.E.2d 266. We believe,

however, that these cases are distinguishable from the case at bar. In both *Marut* and *Khatib* questions by defense counsel regarding prior accidents were designed to imply that the present injuries to the plaintiffs involved resulted from those prior accidents. Thus, the questions were in the nature of a foundation for impeachment. Such was not the situation in the instant case. Here, defendant was not trying to link up the automobile accident with Steve Reeves' present disability. The record shows that during a sidebar conference, defense counsel explained his reason for bringing up the automobile accident. According to counsel, he was merely trying to establish whether plaintiff complained of his headaches and other symptoms to the doctor treating him for the injury resulting from the automobile accident. Defense counsel maintained that a determination of whether plaintiff made any complaints to any doctor between the time of his head injury in March 1981 and the time he next saw a doctor in December 1981 was material to the issue of causation.

The discussion of the accident was not, in our opinion, prejudicial since it was never established whether the automobile accident occurred after or before the head injury. Further, no mention or suggestion was made as to any head injury so as to imply that plaintiff had injured his head in this accident. Additionally, testimony during trial showed that there was no history of any head trauma other than that resulting from the incident at the tavern.

Lastly, plaintiffs complain that references during trial to Steve Reeves' use of marijuana were improper because they were introduced to persuade the jury that drug abuse rather than plaintiff's head injury caused his mental deterioration. The question of Steve Reeves' use of marijuana was raised primarily during direct examination of his own witness, Michael Ludford. Ludford's testimony indicated that during a three-month period when he and the plaintiff car-pooled to work, they shared a "joint" on perhaps 15 to 20 occasions. Evidence showed that Ludford supplied the marijuana and that he almost always finished off the "joint." Although we do not believe that this testimony showed that plaintiff used marijuana in abuse, it is feasible that the jury implied such use constituted an abuse. Thus, we conclude that it was error for the trial court to permit into evidence these references to plaintiff's use of marijuana.

Nevertheless, we find this error to be harmless, as other evidence minimized any inference that drug abuse was responsible for plaintiff's mental deterioration. Dr. Chhabria, on cross-examination, indicated that she was unaware of any chronic drug use by plaintiff, but even if alcohol and marijuana were taken together, the use of marijuana would

not accentuate the effects of alcohol unless the marijuana was taken on a daily basis for an extended period of time. Additionally, on redirect it was revealed by the doctor that plaintiff's use of marijuana to the degree of frequency described by Ludford could not account for plaintiff's symptoms on a permanent basis.

Thus, because plaintiffs themselves also introduced references to Steve Reeves' marijuana use, because the evidence failed to show long-term daily use of marijuana, and because plaintiffs' expert testified that only long-term daily use could aggravate Steve Reeves' mental condition, the references to marijuana use, in this court's opinion, were not prejudicial and constituted only harmless error. Even where errors are shown, a case will not be reversed absent a showing of prejudice. *Herman v. Hamblet* (1980), 81 Ill. App. 3d 1050, 1055, 401 N.E.2d 973.

■ Plaintiffs also contend that defense counsel's references during closing argument regarding Steve Reeves' marijuana use improperly impugned his character and prejudiced the outcome of the case. The record reflects, however, that the parties chose to waive the presence of the court reporter during closing arguments and, thus, these arguments are not part of the record on appeal. Without a record of these arguments it is impossible for this court to review the statements of which plaintiff complains. All purported errors must be preserved in the record to be reviewable (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 952, 364 N.E.2d 533), and when an appellant fails to submit the complete record, the appellate court must presume the decision of the trial court was correct and resolve the issues against the appellant. *People v. Hefley* (1982), 109 Ill. App. 3d 74, 76, 440 N.E.2d 173; *McNaught v. Plotkin* (1977), 52 Ill. App. 3d 548, 549-50, 367 N.E.2d 708.

A jury's determination will not be disturbed on review merely because the jury could have found differently, or the reviewing court believes other conclusions would be more reasonable. (*Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 412, 354 N.E.2d 434.) Although we believe the trial transcript indicates that this was a close case and that the jury could have found differently, our review of the record convinces us that the alleged errors of which plaintiffs complain were not prejudicial to the jury's verdict.

For the reasons stated above, we affirm the judgment of the circuit court of Lake County.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.