## CRAIG v LARSON

Docket No. 81609. Argued October 4, 1988 (Calendar No. 1). Decided May 9, 1989.

Harry Craig brought an action in the Oakland Circuit Court against Kirk A. Larson and Firebird Lanes, Inc., seeking damages for injuries suffered in an automobile accident while a passenger in Larson's vehicle. Both parties had been drinking beer served by Firebird Lanes before the accident, and both were underage. The court, Robert L. Templin, J., granted summary disposition for Firebird Lanes, holding that the plaintiff could not recover under the dramshop act because he had actively participated in Larson's intoxication. The Court of Appeals, DANHOF, C.J., and DOCTOROFF and T. M. GREEN, JJ., affirmed in an unpublished opinion per curiam (Docket No. 86692). The plaintiff appeals, asserting either that principles of comparative negligence should replace the rule that a plaintiff who actively participates in the intoxication of a tortfeasor may not recover under the dramshop act, or that the rule should be applied differently where the plaintiff is a minor.

In an opinion by Justice CAVANAGH, joined by Chief Justice RILEY, and Justices BRICKLEY, BOYLE, and GRIFFIN, the Supreme Court *held:*

The rule that a plaintiff may not recover under the dramshop act if the plaintiff actively participated in the intoxication of the tortfeasor has not been replaced by the principles of comparative negligence; nor should the rule be applied differently where the plaintiff is a minor.

1. The dramshop act provides that a wife, husband, child, parent, guardian, or other person injured by a visibly intoxicated person by reason of the selling of intoxicating liquor to the person has a right of action against the person selling the liquor who contributed to the injury. The Legislature's silence over the past decades may be construed as an affirmance of the Supreme Court's longstanding interpretation that the intoxi-

REFERENCES

Am Jur 2d, Intoxicating Liquors § 591.

Third person's participating or encouraging drinking as barring him from recovery under civil damage or similar acts. 26 ALR3d 1112.

cated person and those who contributed to the intoxication have no right of action under the act. Because the Legislature has expressly precluded partial recovery by the intoxicated person, it seems unlikely that the Legislature intended that the principles of comparative fault would apply in dramshop cases.

2. Recognition of comparative negligence by the Supreme Court does not provide a basis for concluding that the Legislature intended to allow noninnocent parties to recover damages under the dramshop act. The civil damage action defined in the dramshop act is not a common-law remedy based on common-law negligence principles. Instead, it is a remedy created by the Legislature to fill a void left by the general common-law rule of nonliability. It was intended to be a complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under dramshop-related facts. The noninnocent party doctrine is a defense to a statutory cause of action gleaned from the intent of the Legislature and is not dependent on the common-law doctrine of contributory negligence. Because none of the amendments of the act reflect any legislative intention to adopt comparative negligence in place of the established bar to recovery for the intoxicated person or a plaintiff partially responsible for the intoxication of the person who causes injury, it is clear that the Legislature continued to expect that comparative fault would not apply.

3. Prior cases applying or recognizing the noninnocent party doctrine have not addressed whether different rules might apply to adult and minor plaintiffs. However, an examination of the statute discloses no intent to afford dramshop defendants less defenses against minor plaintiffs than against adult plaintiffs. Visibly intoxicated adults and minors to whom a dramshop makes unlawful sales both are barred from bringing actions under the act for their own injuries.

Affirmed.

Justice LEVIN, joined by Justice ARCHER, concurring in part and dissenting in part, stated that nothing in § 22 of the liquor control act (the dramshop act) indicates whether the judicial construction of that legislation, known as the noninnocent party doctrine, should apply to a minor as well as an adult. In failing to provide a remedy to an intoxicated person, § 22 does not indicate what the rule should be when an injured person is seeking to recover for injuries resulting from an unlawful sale to another person to whose drinking the injured person contributed.

Section 33 of the liquor control act, which bars sales to a

minor, introduces another legislative policy which justifies and requires distinguishing between a minor and an adult who, together with the tavern, contributed to the drinking of the person whose driving caused the minor's injury. In light of that declaration of legislative policy, the Supreme Court cannot appropriately apply the "consequences for which he was directly and actively responsible" and "noninnocent" rationales— stated in propounding the noninnocent party doctrine in actions brought by adults—in an action brought by a minor. Minors, by reason of that declaration of legislative policy, are deemed as a matter of law to be so innocent regarding alcoholic beverages that no sales are to be made to them and thereby are to be protected against "consequences" for which they would otherwise be responsible and for which, by reason of that declaration of legislative policy, the tavern, not the minor, is "directly and actively responsible." On the basis of § 33, barring all sales to a minor, the judicially developed noninnocent party doctrine should be held not to apply to a minor, and a minor who participated, together with the tavern, in furnishing liquor to the intoxicated person should be permitted to maintain an action against the tavern for injuries suffered as a result of an unlawful sale of intoxicating liquor by the tavern.

INTOXICATING LIQUORS — DRAMSHOP ACT — NONINNOCENT PARTY
    DOCTRINE — COMPARATIVE NEGLIGENCE — MINORS.

The rule that a plaintiff may not recover under the dramshop act if the plaintiff actively participated in the intoxication of the tortfeasor has not been replaced by the principles of comparative negligence; nor should the rule be applied differently where the plaintiff is a minor (MCL 436.22[5]; MSA 18.993[5]).

*Barnett, Knight, Preston, Falvay, Drolet & Freeman* (by *Kirk D. Falvay*) for the plaintiff.

*Kaufman & Payton* (by *Jo Robin Davis*) for the defendant.

CAVANAGH, J.

I

Late in the evening of April 2, 1983, plaintiff-appellant Harry Craig, then aged twenty, joined

defendant Kirk Larson, aged nineteen, in Larson's car. Appellant brought several cans of beer with him. With Larson driving, the two went to JB's Firebird Lounge, consuming some of the beer en route. At the lounge, appellant and Larson drank beer served to them by the lounge. Larson testified in his deposition that they alternated paying for the beer. Appellant testified in his deposition that either of them could have paid for the beer. The two young men left the lounge in Larson's car, with Larson driving. A short time later, appellant was seriously injured when Larson's car collided with another vehicle.

Appellant brought this action against Larson, seeking damages for negligence, and against appellee Firebird Lanes, Inc., seeking damages under Michigan's dramshop act[1] MCL 436.22; MSA 18.993. The trial court granted summary judgment to defendant-appellee Firebird Lanes, Inc., holding that appellant could not recover under the dramshop act against appellee Firebird Lanes, Inc., because appellant actively participated in Larson's intoxication. The Court of Appeals affirmed.

We granted leave to consider the following issues: (1) whether or not principles of comparative negligence should replace the rule, also known as the noninnocent party doctrine, that a plaintiff may not recover under the dramshop act if the plaintiff actively participated in the intoxication of the tortfeasor, and (2) whether or not the rule should be applied differently where the plaintiff is a minor. We hold that comparative negligence has not replaced the noninnocent party doctrine as a defense in a dramshop action, and we decline to apply the noninnocent party doctrine differently when the plaintiff is a minor.

---

[1] Section 22 of the Michigan Liquor Control Act, 1933 (Ex Sess) PA 8 as amended by 1980 PA 351.

II

The section of the Liquor Control Act governing dramshop actions at the time this case was filed provides in part:

> A wife, husband, child, parent, guardian, or other person injured in person, property, means of support, or otherwise, by a visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of intoxicating liquor to the person, if the sale is proven to be a proximate cause of the injury or death, shall have a right of action in his or her name against the person who by the selling, giving, or furnishing the liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the injury. [1933 (Ex Sess) PA 8, as amended by 1980 PA 351, MCL 436.22(5); MSA 18.993(5).]

Recently, this Court declared, "Under this state's dramshop act, the intoxicated person himself and those who contributed to his intoxication have no right of action under the act." *Jackson v PKM Corp,* 430 Mich 262, 267-268; 422 NW2d 657 (1988) (interpreting the provision quoted above). This interpretation of the act has prevailed for several decades. *Malone v Lambrecht,* 305 Mich 58, 61-62; 8 NW2d 910 (1943); *Kangas v Suchorski,* 372 Mich 396, 399; 126 NW2d 803 (1964).[2] Appellant urges us to reëvaluate this interpretation and exercise our authority to reshape the common law by replacing the noninnocent party doctrine with principles of comparative fault.

Citing *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), where this Court abandoned

---

[2] Other states have adopted a similar defense. See, generally, anno, *Third person's participating in or encouraging drinking as barring him from recovering under civil damage or similar act,* 26 ALR3d 1112.

the common-law doctrine of contributory negli-
gence and adopted comparative negligence, appel-
lant argues that the noninnocent party doctrine is
of common-law, not legislative, origin, and is
therefore subject to change by the judiciary. The
dramshop act does not state specifically that a
plaintiff who participates in the intoxication of the
allegedly intoxicated person may not recover dam-
ages under § 22. Regarding defenses, the statute
says only that "all factual defenses open to the
alleged intoxicated person or minor shall be open
and available to the principal and surety."[3] Thus,
the noninnocent party doctrine is not mandated by
an express declaration of the Legislature. How-
ever, keeping in mind that the object of statutory
construction is "to ascertain and give effect to the
intention of the Legislature," *Browder v Int'l Fi-
delity Ins Co,* 413 Mich 603, 611; 321 NW2d 668
(1982), we decline to disturb our long-settled judi-
cial interpretation of the Legislature's intent.

A

In *Rosecrants v Shoemaker,* 60 Mich 4; 26 NW
794 (1886), this Court interpreted 1881 PA 259, as
amended by 1883 PA 191, a precursor of the
provision before us today, as barring recovery by a
plaintiff who suffered injuries as the result of an
unlawful sale of liquor to her husband if the
plaintiff herself caused, encouraged, or requested
the sale. The Court reasoned that such a plaintiff
"does not stand on the footing of an innocent
injured party." *Id.* at 7. The Court in *Morton v
Roth,* 189 Mich 198, 202; 155 NW 459 (1915), again
held that a person who participates in the intoxi-

---

[3] In 1986, this language was amended to read "all defenses of the
alleged visibly intoxicated person or the minor shall be available to
the licensee." 1933 (Ex Sess) PA 8, as amended by 1986 PA 176, MCL
436.22(8); MSA 18.993(8).

cation of the intoxicated person "is not an 'other person' within the meaning of the statute . . . ." In *Malone,* the Court reviewed *Rosecrants* and *Morton* and recognized that the more recent enactment, 1933 (Ex Sess) PA 8, as amended by 1937 PA 281, failed to change the noninnocent party defense earlier held to be intended by the Legislature.

> If the Legislature in enacting our more recent statutes had intended to depart from the long-established construction of the civil-damage provisions of like enactments above noted, it seems certain that it would have expressed such intention in clear and definite terms. Instead the recent enactments follow quite literally the wording of the earlier provisions of like character. [*Malone,* 305 Mich 61-62.]

The same reasoning applies to the present question. The Legislature amended the Liquor Control Act several times between the time *Malone* was decided and the events of this case,[4] modifying the language of § 22 in 1958, 1961, 1972, and 1980.[5] In none of these efforts to revise the scope of the dramshop cause of action did the Legislature undertake to limit or preclude the noninnocent party doctrine, despite this Court's reaffirmance that the noninnocent party doctrine was a complete defense to a dramshop action in *Malone, McDaniel v Crapo,* 326 Mich 555, 558; 40 NW2d 724 (1950), and *Kangas, supra.*[6] Instead, the language defining who may bring a civil damage action remained essentially the same.

---

[4] 1951 PA 219; 1958 PA 152; 1961 PA 224; 1972 PA 196; 1980 PA 351.

[5] 1958 PA 152; 1961 PA 224; 1972 PA 196; 1980 PA 351.

[6] See also *Todd v Biglow,* 51 Mich App 346, 351; 214 NW2d 733 (1974), lv den 391 Mich 816 (1974).

In addition, between 1980 and 1986, when the Legislature again amended § 22, published opinions continued to apply the noninnocent party doctrine.[7] Three of these decisions expressly rejected an argument, similar to appellant's, that comparative negligence has replaced the defense. *Goss v Richmond,* 146 Mich App 610; 381 NW2d 776 (1985); *Barrett v Campbell,* 131 Mich App 552; 345 NW2d 614 (1983), lv den 419 Mich 877 (1984); *Dahn v Sheets,* 104 Mich App 584, 591; 305 NW2d 547 (1981), lv den 412 Mich 928 (1982). Yet the Legislature, in its extensive 1986 amendments of the act, failed to suggest any intention to modify or eliminate the judiciary's construction. Under these circumstances, we construe the Legislature's silence over the past decades as an affirmance of this Court's interpretation. See *Longstreth v Gensel,* 423 Mich 675, 691; 377 NW2d 804 (1985); *Wikman v City of Novi,* 413 Mich 617, 638; 322 NW2d 103 (1982); *Smith v Detroit,* 388 Mich 637, 650-651; 202 NW2d 300 (1972); *In re Clayton Estate,* 343 Mich 101, 106-107; 72 NW2d 1 (1955).

B

Not only does the Legislature's acquiescence in this established interpretation counsel against announcing a new rule adopting comparative negligence for noninnocent parties, the language in § 22 itself is inconsistent with such a rule. The statute allows recovery by a "wife, husband, child, parent, guardian, or other person injured . . . *by* a visibly intoxicated person . . . ." MCL 436.22(5); MSA

---

[7] *Arciero v Wicks,* 150 Mich App 522; 389 NW2d 116 (1986); *Plamondon v Matthews,* 148 Mich App 737; 385 NW2d 273 (1985); *Goss v Richmond,* 146 Mich App 610; 381 NW2d 776 (1985); *Barrett v Campbell,* 131 Mich App 552; 345 NW2d 614 (1983), lv den 419 Mich 877 (1984); *Dahn v Sheets,* 104 Mich App 584, 591; 305 NW2d 547 (1981), lv den 412 Mich 928 (1982).

18.993(5) (emphasis added).[8] Given this language,
the intoxicated person who injures himself cannot
recover any damages from the dramshop, even
though the dramshop may be partially responsible
for his injuries.[9] In light of the Legislature's clear
intention to preclude partial recovery by the intox-
icated person himself, we cannot conclude that the
Legislature nevertheless intended partial recovery
to be available to a dramshop plaintiff who ac-
tively participates in the intoxication of the person
who thereafter injures her.[10] It seems unlikely that
the Legislature intended that the principles of
comparative fault would apply in cases brought by
some noninnocent plaintiffs, but not in cases
brought by others.

C

The modification in common-law negligence de-
fenses wrought by the 1979 decision in *Placek* fails
to provide a basis for revising our conclusion that

---

[8] The 1986 amendment changing the wording of this phrase did not
disturb its effect of barring recovery by the intoxicated person who
purchased liquor unlawfully. The new statute allows recovery by "an
individual who suffers damage or is personally injured by a minor or
visibly intoxicated person . . . ." 1933 (Ex Sess) PA 8, as amended by
1986 PA 176, MCL 436.22(4); MSA 18.993(4).

[9]   In striking the balance between the rights of persons injured
under dramshop-related facts and the extent of the tavern
owner's liability, the Legislature chose to omit intoxicated
persons as a class protected by the act. . . . [W]e believe the
Legislature's failure to include the intoxicated party within the
class of persons protected is indicative of its belief that the
intoxicated party should not be afforded a remedy. To construe
the statute otherwise would do violence to the Legislature's
intent and its continuing efforts to keep the act internally
balanced. [*Jackson,* 430 Mich 276.]

[10] We do not reach the question whether comparative negligence is
available as a defense in a dramshop action where the plaintiff's fault
does not involve participation in bringing about the intoxication of
the person who causes her injury. See *Lyman v Bavar Co, Inc,* 136
Mich App 407, 410; 356 NW2d 28 (1984); *Heyler v Dixon,* 160 Mich
App 130, 153-154; 408 NW2d 121 (1987), lv den 428 Mich 922 (1987).

the Legislature intended to bar noninnocent parties from recovering damages under the dramshop act. The civil damage action defined in the dramshop act is not a common-law remedy based on common-law negligence principles. *Longstreth,* 423 Mich 696. Instead, the remedy of § 22 was created long ago by the Legislature to "fill the void left by the common law's general rule of nonliability." *Jackson,* 430 Mich 267. It was intended to be "a complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under 'dramshop related facts.' " *Millross v Plum Hollow Golf Club,* 429 Mich 178, 186; 413 NW2d 17 (1987); *Jackson,* 430 Mich 274-276.

The noninnocent party doctrine is a defense to this statutory cause of action gleaned from the intent of the Legislature and is not dependent upon the common-law doctrine of contributory negligence.[11] In none of its prior decisions did this Court rely on common-law negligence principles or mention contributory negligence when interpreting the Legislature's intent to bar noninnocent party recovery under the act. Any development in common-law negligence rules, including the *Placek* decision, cannot be grafted upon § 22 unless the Court first finds that that is the Legislature's intent.

We are not persuaded that the Legislature intended the principles of the *Placek* decision to be applied in a dramshop action. We note the Legislature has had no difficulty whatever in explicitly applying the principles of comparative negligence in a number of other instances, including product

---

[11] See also *Nelson v Araiza,* 69 Ill 2d 534, 536-540; 14 Ill Dec 441; 372 NE2d 637 (1977) (stating recovery by a plaintiff guilty of complicity in the inebriate's intoxication would undermine the purpose of the dramshop act, distinguishing complicity from the common-law negligence concept of contributory negligence.)

liability actions, and the areas of contribution and joint and several liability.[12] However, neither the 1980 nor the 1986 amendments of § 22 reflect any legislative intention to adopt comparative negligence in place of the established bar to recovery for the intoxicated person or a plaintiff partially responsible for the intoxication of the person who causes injury. Instead, the Legislature left unchanged the language which precludes all recovery by the intoxicated person himself, demonstrating that the Legislature continued to expect that comparative fault not apply.[13]

### D

We agree with appellant that the dramshop act is remedial in nature and should be liberally construed,[14] and that any construction that decreases the defenses available under the act may further the legislative purpose of deterring unlaw-

---

[12] See MCL 600.2949; MSA 27A.2949, MCL 600.2925b; MSA 27A.2925(2), and MCL 600.6304; MSA 27A.6304.

[13] Other jurisdictions with statutory remedies similar to Michigan's have declined to apply comparative negligence principles in cases brought by noninnocent parties. See *Herrly v Muzik,* 374 NW2d 275 (Minn, 1985) (en banc); *Martin v Heddinger,* 373 NW2d 486 (Iowa, 1985); *Reeves v Brno, Inc,* 138 Ill App 3d 861; 93 Ill Dec 304; 486 NE2d 405 (1985). Compare *Baxter v Noce,* 107 NM 48; 752 P2d 240 (1988) (replacing complicity defense with comparative negligence "because the action [under New Mexico Stat Ann, § 41-11-1(B)] sounds in negligence . . . .")

[14] See *Browder,* 413 Mich 616, n 9; *LaBlue v Specker,* 358 Mich 558, 568; 100 NW2d 445 (1960) (" 'This Court has always construed this statute liberally, and has not deemed that the true legislative intent was to be ascertained by any strained or narrow construction of the words employed' "); *Podbielski v Argyle Bowl, Inc,* 392 Mich 380, 384-385; 220 NW2d 397 (1974).

But see *Holland v Eaton,* 373 Mich 34, 39; 127 NW2d 892 (1964) ("Since, however, the Legislature has acted in the area by enactment of a statute in derogation of the common-law rule, the right and remedy created by the statute are exclusive . . . and the statute, though remedial, must be strictly construed"); *Millross,* 429 Mich 184 (application of strict construction appropriate to the dramshop act; quoted with approval in *Jackson,* 430 Mich 274, n 11).

ful liquor sales. However, the legislative history of the act reflects repeated efforts by the Legislature to narrow the liability of dramshop owners. The amendments of 1958, 1961, 1972, and 1986 have consistently limited, not expanded, dramshop liability.[15] Given the Legislature's attempts over the past decades to carefully and deliberately delineate the scope of dramshop liability, accepting appellant's invitation to expand dramshop liability would be improvident and would risk disturbing the remedial balance the Legislature has attempted to achieve.

III

We now examine whether comparative fault principles should nevertheless apply in the specific circumstances of this case involving a minor plaintiff who actively participated in the intoxication of the person alleged to have caused him injury.

No case decided by this Court applying or recognizing the noninnocent party doctrine has addressed whether or not different rules might apply for adult and minor plaintiffs.[16] However, an examination of the statute itself discloses no legislative

[15] See *Browder,* 413 Mich 614-615 (pre-1986 amendments include addition of a two-year statute of limitations, provision of automatic bond continuance, elimination of exemplary damages, addition of proximate causation, a name and retain provision to prevent collusion, and defenses); *Roy v Rau Tavern, Inc,* 167 Mich App 664, 670; 423 NW2d 54 (1988) (1986 amendments which eliminated recovery for relatives of visibly intoxicated persons were "designed to deal with the numerous cases which were creating a liability crisis for tavern and restaurant owners"). See also note 1, *supra,* and accompanying text.

[16] See, e.g., *Jackson,* 430 Mich 267-268. The Court of Appeals, however, has reached facts similar to those in this case and ruled that the noninnocent party doctrine applies to a minor plaintiff who contributed to the intoxication of another minor. *Dahn v Sheets, supra.* The Legislature's silence in its 1986 act subsequent to *Dahn* provides some support for the conclusion that the Legislature intended that the noninnocent party doctrine apply equally to minor plaintiffs.

intent to afford dramshop defendants less defenses against minor plaintiffs than against adult plaintiffs.

Admittedly, the Liquor Control Act imposes greater restrictions and controls where minors are involved. While a vendor is prohibited from selling liquor to "any person in an intoxicated condition," MCL 436.29(2); MSA 18.1000(2), there is no criminal prohibition against such sales. By contrast, selling, *or furnishing,* liquor to a minor is a misdemeanor. MCL 436.33; MSA 18.1004. Minors are subject to penalties under the act that adults, even visibly intoxicated adults, are not. For instance, minors who transport or possess liquor in a car commit a misdemeanor. MCL 436.33a; MSA 18.1004(1). Minors who buy, consume, or possess liquor are subject to civil fines. MCL 436.33b; MSA 18.1004(2).

On the basis of the act's heightened regulation of minors' access to alcohol, appellant argues that the Legislature does not believe minors are capable of understanding, anticipating, or handling the consequences of alcohol consumption. Accordingly, appellant argues, although adults may be held responsible for their lack of judgment under the noninnocent party doctrine, minors should not be penalized for their allegedly noninnocent behavior, but should be allowed at least partial recovery under the act.

Despite the merits of appellant's premise,[17] the Legislature in enacting § 22 has rejected it. Section 22 limits dramshop plaintiffs to persons injured "by" the intoxicated person. Both a minor and a visibly intoxicated adult to whom a dramshop makes unlawful sales are barred from bringing an

[17] See *Longstreth,* 423 Mich 697 (a minor plaintiff was not considered competent to handle the effects of intoxication); see also *Congini v Portersville Valve Co,* 504 Pa 157, 160-162; 470 A2d 515 (1983).

action under § 22 for their own injuries.[18] Under appellant's view, however, neither the minor who drinks and later injures himself, nor the minor who encourages another to drink and is later injured by that other person, can understand or anticipate the consequences of alcohol consumption. Because appellant's premise does not accommodate the legislative decision to bar all recovery by the former minor, we cannot accept it as a basis for finding a legislative intent to treat minor plaintiffs differently than adult plaintiffs under the act.

Appellant also argues that special rules apply to children in other tort contexts, likening the proposed comparative negligence defense for minor plaintiffs in dramshop actions to attractive nuisance and modified negligence standards for children. However, as the dramshop action is not based on common-law tort principles, any insights into legislative intent gained by examining developments in unrelated tort actions have little value compared to interpretations of the statute's language. Similarly, although this Court's decision in *Longstreth* established different rules for minor and adult plaintiffs in common-law actions against social hosts, *Longstreth* involved the judicial craft-

[18] See *Longstreth,* 423 Mich 696 (recognizing that concluding an underage plaintiff may recover for injury inflicted upon himself after consuming alcohol furnished by his host gives the plaintiff "a remedy against his hosts which is not presently available under § 22 against licensees"); *Rosas v Damore,* 171 Mich App 563; 430 NW2d 783 (1988); *Hasty v Broughton,* 133 Mich App 107, 114; 348 NW2d 299 (1984); *Cornack v Sweeney,* 127 Mich App 375, 378-380; 339 NW2d 26 (1983). The "name and retain" provision added in 1972 suggests that the Legislature did not envision "the minor or alleged intoxicated person" as a plaintiff in an action under the section, but instead sought to insure the minor's presence as a defendant. By adding the words "minor or" before "visibly intoxicated person" in what is now subsection 4 of § 22, the 1986 amendments of the dramshop action make even more explicit the Legislature's intent to preclude underage imbibers from recovering damages for their own injuries.

ing of a common-law, not a legislatively created, remedy.

### IV

The history and present language of the dramshop act cause this Court to defer to legislative initiative in the engrafting of the principle of comparative fault upon this statutory remedy.[19] Accordingly, we affirm the judgments of the courts below.

Riley, C.J., and Brickley, Boyle, and Griffin, JJ., concurred with Cavanagh, J.

Levin, J. (*concurring in part and dissenting in part*). We agree—in light of this Court's "long-settled judicial interpretation"[1] of § 22 of the liquor law,[2] generally referred to as the dramshop act, that a person who "participated in furnishing liquor"[3] to the intoxicated person may not maintain an action under the act—that it would not be appropriate for this Court to in effect reconstrue

---

[19] For arguments advocating the adoption of comparative negligence in dramshop actions brought by noninnocent parties, see *Herrly v Muzik,* n 13 *supra* at 279-280 (Scott, J., dissenting); comment, *Dramshop liability: Should the intoxicated person recover for his own injuries?*, 48 Ohio St L J 227 (1987). See also *Jackson,* 430 Mich 281-282 (Archer, J., concurring in part, suggesting that the Liquor Control Act be amended to afford a visibly intoxicated patron recovery apportioned by comparative negligence for the grossly negligent conduct of a tavern owner in selling, giving away, or furnishing intoxicants); *Passini v Decker,* 39 Conn Supp 20; 467 A2d 442 (1983); note, Longstreth v Gensel, *Expanding liability of the social host,* 1986 DCL L R 581, 592 (discussing *Longstreth's* application of comparative negligence in common-law actions against social hosts, arguing that it is unfair to allow greater recovery against a social host than against a commercial establishment, particularly because the social host does not profit from serving the minor).

[1] *Ante,* p 351.

[2] MCL 436.22; MSA 18.993.

[3] *Morton v Roth,* 189 Mich 198, 202; 155 NW 459 (1915). But see n 25.

the act by applying, in an action brought under the act, the doctrine of comparative fault.

In all the cases establishing this long-settled judicial interpretation, the plaintiff was, however, an adult. We would hold that the noninnocent party doctrine does not apply to a minor, and that Craig, who participated, together with the defendant tavern, in furnishing liquor to Larson, may maintain an action against the tavern for injuries suffered as a result of an unlawful sale of intoxicating liquor by the tavern.

I

The majority states:

> No case decided by this Court applying or recognizing the noninnocent party doctrine has addressed whether or not different rules might apply for adult and minor plaintiffs.[16]

---

[16] See, e.g., *Jackson* [v *PKM Corp*], 430 Mich [262] 267-268 [422 NW2d 657 (1988)]. The Court of Appeals, however, has reached facts similar to those in this case and ruled that the noninnocent party doctrine applies to a minor plaintiff who contributed to the intoxication of another minor. *Dahn v Sheets, supra.* The Legislature's silence in its 1986 act subsequent to *Dahn* provides some support for the conclusion that the Legislature intended that the noninnocent party doctrine apply equally to minor plaintiffs.[4]

---

A

This being the first case to reach this Court presenting the question whether the noninnocent party doctrine applies to a minor plaintiff, it has yet to be decided whether the same or a different rule applies to a minor plaintiff.

The majority refers to *Dahn v Sheets,* 104 Mich

[4] *Ante,* p 357.

App 584, 590-591; 305 NW2d 547 (1981), lv den 412 Mich 928 (1982). The Court of Appeals did not "rule" in *Dahn v Sheets* that the noninnocent party doctrine applies to a minor plaintiff who furnished liquor to another minor. The Court of Appeals assumed, without considering and thus without ruling or deciding, that the same rule applied, but remanded the case for a new trial, stating it was a question for the jury whether the minor had "actively participated in [the intoxicated person's] intoxication." *Id.*, pp 590-591.[5]

B

This Court denied leave to appeal in *Dahn v Sheets*. It is well settled that in denying leave to appeal, this Court intimated no view regarding the correctness of the decision, let alone the statements or assumptions, of the Court of Appeals.

This Court frequently ignores statements and assumptions in opinions of the Court of Appeals with which a majority of the justices may be inclined to disagree, especially where the cause is remanded to the trial court for further proceedings.

On a number of occasions this Court has denied leave to appeal, and subsequently granted leave to appeal in another case and ruled contrary to an earlier Court of Appeals decision.[6]

It is beyond the capacity of this Court to parse the opinions of the twenty-four judges of the Court of Appeals and those who sit by assignment for possible error in analysis or expression and to grant leave to appeal and hear and decide and

[5] See n 25.

[6] See, e.g., *Tebo v Havlik*, 418 Mich 350; 343 NW2d 181 (1984); *Riley v Northland Geriatric Center (After Remand)*, 431 Mich 632; 433 NW2d 787 (1988).

correct every perceived misstatement or assumption made in deciding a case especially if a majority agrees the case was correctly decided.

Applying the legislative-silence canon of construction to a solitary decision of the Court of Appeals might require this Court henceforth to scrutinize the decisions of the Court of Appeals with far greater care than we realistically have the capacity to do.

C

Just as we may overlook a decision or assumption of the Court of Appeals, so too may the Legislature. The dubious legislative-silence canon of statutory construction has indeed been given credence by this Court in a variety of contexts.[7] Justice Harlan, speaking for the United States Supreme Court, in *Zuber v Allen,* 396 US 168, 185; 90 S Ct 314; 24 L Ed 2d 345 (1969), said that "[l]egislative silence is a poor beacon to follow in discerning the proper statutory route." Justice Rutledge, concurring in an earlier case, explained why this canon of statutory construction should be applied with caution:

> There are vast differences between legislating by doing nothing and legislating by positive enactment, both in the processes by which the will of Congress is derived and stated and in the clarity and certainty of the expression of its will. And there are many reasons, other than to indicate approval of what the courts have done, why Congress may fail to take affirmative action to repudiate their misconstruction of its duly adopted laws.

[7] *Longstreth v Gensel,* 423 Mich 675, 691; 377 NW2d 804 (1985); *Wikman v City of Novi,* 413 Mich 617, 638; 322 NW2d 103 (1982); *In re Clayton Estate,* 343 Mich 101, 106-107; 72 NW2d 1 (1955); *Smith v Detroit,* 388 Mich 637, 650; 202 NW2d 300 (1972); *Luttrell v Dep't of Corrections,* 421 Mich 93, 105; 365 NW2d 74 (1984).

Among them may be the sheer pressure of other
and more important business. See *Moore v Cleve-
land R Co,* 108 F2d 656, 660 [CA 6, 1940]. At times
political considerations may work to forbid taking
corrective action. And in such cases, as well as
others, there may be a strong and proper tendency
to trust to the courts to correct their own errors,
see *Girouard v United States* [328 US 61, 69; 66 S
Ct 826; 90 L Ed 1084 (1946)], as they ought to do
when experience has confirmed or demonstrated
the errors' existence.

The danger of imputing to Congress, as a result
of its failure to take positive or affirmative action
through normal legislative processes, ideas enter-
tained by the Court concerning Congress' will, is
illustrated most dramatically perhaps by the vacil-
lating and contradictory courses pursued in the
long line of decisions imputing to "the silence of
Congress" varied effects in commerce clause cases.
That danger may be and often is equally present
in others. More often than not, the only safe
assumption to make from Congress' inaction is
simply that Congress does not intend to act at all.
Cf. *United States v American Trucking Ass'ns,* 310
US 534, 550 [60 S Ct 1059; 84 L Ed 1345 (1940)]. At
best the contrary view can be only an inference,
altogether lacking in the normal evidences of legis-
lative intent and often subject to varying views of
that intent. In short, although recognizing that by
silence Congress at times may be taken to acqui-
esce and thus approve, we should be very sure
that, under all the circumstances of a given situa-
tion, it has done so before we so rule and thus at
once relieve ourselves from and shift to it the
burden of correcting what we have done wrongly.
The matter is particular, not general, notwith-
standing earlier exceptional treatment and more
recent tendency. Just as dubious legislative history
is at times much overridden, so also is silence or
inaction often mistaken for legislation. [*Cleveland
v United States,* 329 US 14, 22-24; 67 S Ct 13; 91 L
Ed 12 (1946). (Rutledge, J., concurring.)]

The legislative-silence canon of statutory con-

struction ignores that the constitution spells out
the manner by which legislative intent is to be
expressed, three readings in each house,[8] enact-
ment, and gubernatorial approval or passage over
his veto.[9]

There is no reason to believe that a majority of
the House and Senate and the Governor were
aware of *Dahn v Sheets* or gave a moment's
thought to the assumption by the Court of Appeals
that the noninnocent party doctrine applied to a
minor plaintiff. Legislative silence is a "weak reed
upon which to lean."[10]

## II

The majority relies[11] on a statement in *Jackson
v PKM Corp*, 430 Mich 262, 276; 422 NW2d 657
(1988), where this Court held that its earlier deci-
sions, ruling that the statutory remedy set forth in
the dramshop act was the exclusive remedy
against a tavern,[12] precluded a common-law action
by a person who claimed that the defendant tav-
ern knew that she was a compulsive, habitual
alcoholic, and was grossly negligent and acted
wilfully, wantonly, intentionally and recklessly in
furnishing her intoxicating beverages, and in so
holding said: "the Legislature chose to omit intoxi-
cated persons as a class protected by the act." This
observation was made in responding to the argu-
ment that the omission "evinc[ed] an intention to
permit an intoxicated party, regardless of condi-

---

[8] Const 1963, art 4, § 26.

[9] Const 1963, art 4, § 33.

[10] 2A Sands, Sutherland Statutory Construction (4th ed), § 49.10, p
407.

[11] *Ante*, p 354, n 9.

[12] See *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 614-615; 321
NW2d 668 (1982); *Longstreth*, n 7 *supra*, p 696; *Kangas v Suchorski*,
372 Mich 396, 401; 126 NW2d 803 (1964).

tion or degree of intoxication, to pursue other common-law theories of liability which"—said the Court—"would effectively afford such persons greater rights and avenues of recovery than those available to innocent third parties."

The Court's further observation in *Jackson v PKM Corp, supra,* that the "Legislature's failure to include the intoxicated party within the class of persons protected is indicative of its belief that the intoxicated party should not be afforded a remedy" was made in the context of an action, not based on the dramshop act, for injury suffered as a result of sales of alcoholic beverages to the *plaintiff,* the only drinker and person, other than the tavern, involved in her injury. Harry Craig is seeking to maintain a dramshop action for injury suffered as a result of unlawful sales by the tavern, not to Craig, but to *another person.*[13]

In *Heikkala v Isaacson,* 178 Mich 176, 178-183; 144 NW 508 (1913), the evidence tended to show that Daniel Heikkala and Henry Lund were drinking in August Isaacson's saloon, that liquor was sold to Lund in that saloon after he became intoxicated, and that while so intoxicated Lund struck Heikkala. The evidence also tended to show that Heikkala "was somewhat intoxicated at the time of the injury." Isaacson contended that Heikkala had no right of action under the dramshop act "because there was testimony tending to show he himself was intoxicated." This Court acknowledged that there was "testimony in the record tending to show that both plaintiff and the said Lund were intoxicated at the time of the injury complained of," but nevertheless held that "the case is brought directly within the provisions of" the dramshop act and that Heikkala was an "other person" who

---

[13] The majority does not and could not properly affirm the decision of the Court of Appeals on the authority of *Jackson v PKM Corp.*

could maintain an action under the act. The Court further ruled that the trial judge had not erred in charging the jury on proximate cause that "the claimed intoxication of the plaintiff had no bearing in the case . . . ."

### III

The linguistic argument, that because a plaintiff who seeks to recover under the dramshop act must show he has been injured "*by* a visibly intoxicated person,"[14] a plaintiff "who injures himself cannot recover any damages from the dramshop, even though the dramshop may be partially responsible for his injuries,"[15] ignores a settled construction of the act.

A passenger in an automobile may maintain an action under the dramshop act although there may be other tortfeasors who also contributed to his injury.[16] The dramshop act has not been construed as requiring the injured person to prove that his injuries are caused *solely* "by a visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of intoxicating liquor to the person."[17] The injured person may recover from a tavern that so unlawfully sells, gives, or furnishes liquor although the driver of another automobile or the manufacturer of the automobile or another person, by their concurrent fault or negligence, also contributed to plaintiff's injury,[18] and even if the plaintiff also became intoxicated in the tavern. *Heikkala v Isaacson, supra.*

---

[14] MCL 436.22; MSA 18.993.

[15] *Ante,* p 354.

[16] See *O'Dowd v General Motors Corp,* 419 Mich 597, 605; 358 NW2d 553 (1984); *Larabell v Schuknecht,* 308 Mich 419, 423; 14 NW2d 50 (1944); *Duncan v Beres,* 15 Mich App 318, 323; 166 NW2d 678 (1968).

[17] See n 13.

[18] *Id.*

It is thus immaterial that Craig's injury was not caused solely by the *act of the defendant* tavern in unlawfully selling, giving, or furnishing liquor to Kirk A. Larson. It begs the question—whether the noninnocent party doctrine applies to a minor, Craig, who furnishes liquor to another person, Larson, who together with the tavern caused his injury—to stress that Craig's injury may not have been *caused* solely by the acts of Larson and the tavern but also in part by Craig's act in providing or purchasing liquor for Larson. Indeed, to the extent the Court would preclude recovery by Craig, not because he contributed to Larson's *drinking,* but rather because by so doing he contributed to or caused his own *injury,* the Court lends credence to Craig's argument, rejected by the Court, that the doctrine of comparative fault should replace the noninnocent party doctrine now that contributory fault is no longer generally an absolute bar to any recovery.

IV

The Legislature has, to be sure, "narrow[ed] the liability of dramshop owners"[19] in recent legislation. It does not follow that it would "expand dramshop liability"[20] were the Court to hold that the judicially enunciated noninnocent party doctrine, developed in cases involving adult plaintiffs, does not apply where the plaintiff is a minor.

This is a case of first impression. There is thus no decision of this Court ruling whether the Legislature intended that the noninnocent party doctrine would apply to a minor plaintiff. When we decide this case, we decide for the first time what the Legislature intended in enacting the dramshop

[19] *Ante,* p 357.
[20] *Ante,* p 357.

act. This Court's construction of the act in the instant case states the scope of a tavern's liability as it was when the dramshop act was enacted, and thus this Court's decision can neither narrow nor expand the scope of the liability as it was from inception.

V

The majority states that because the Legislature did not provide a § 22 dramshop remedy against a tavern for an intoxicated person, adult or minor, the Legislature thereby indicated that no distinction should be made in applying the noninnocent party doctrine between adults and minors.[21]

The noninnocent party doctrine developed by

---

[21] The majority states that an examination of the dramshop act "discloses no legislative intent to afford dramshop defendants less defenses against minor plaintiffs than against adult plaintiffs." *Ante,* p 358.

The majority further states:

Section 22 limits dramshop plaintiffs to persons injured "by" the intoxicated person. Both a minor and a visibly intoxicated adult to whom a dramshop makes unlawful sales are barred from bringing an action under § 22 for their own injuries. Under appellant's view, however, neither the minor who drinks and later injures himself, nor the minor who encourages another to drink and is later injured by that other person, can understand or anticipate the consequences of alcohol consumption. Because appellant's premise does not accommodate the legislative decision to bar all recovery by the former minor, we cannot accept it as a basis for finding a legislative intent to treat minor plaintiffs differently than adult plaintiffs under the act. [*Ante,* pp 358–359.]

The majority continues in a footnote:

See *Longstreth,* 423 Mich 696 (recognizing that concluding an underage plaintiff may recover for injury inflicted upon himself after consuming alcohol furnished by his host gives the plaintiff "a remedy against his hosts which is not presently available under § 22 against licensees"); *Rosas v Damore,* 171 Mich App 563; 430 NW2d 783 (1988); *Hasty v Broughton,* 133 Mich App 107, 114; 348 NW2d 299 (1984); *Cornack v Sweeney,* 127 Mich App 375, 378-380; 339 NW2d 26 (1983). The "name and retain"

this Court in the construction of the dramshop act,
that a person—in all prior cases an adult—who
furnishes liquor to another who, together with the
tavern, caused the contributor's injury, may not
maintain a dramshop action against the tavern
was not predicated on and did not follow ineluct-
ably from the structure of the act in failing to
provide a dramshop remedy against the tavern for
an intoxicated person when he is the only drinker
involved.

A

The dramshop act provides in § 22 that "an
individual who suffers damage or is personally
injured by a minor or visibly intoxicated person,"
may bring a dramshop action.[22] It is thus indeed
clear from the structure of the act[23] that neither a
minor nor a visibly intoxicated person may bring a
dramshop action "for their own injuries"[24] suffered
in consequence of unlawful sales by the tavern to
the minor or visibly intoxicated person.

provision added in 1972 suggests that the Legislature did not
envision "the minor or alleged intoxicated person" as a plaintiff
in an action under the section, but instead sought to insure the
minor's presence as a defendant. By adding the words "minor
or" before "visibly intoxicated person" in what is now subsec-
tion 4 of § 22, the 1986 amendments of the dramshop action
make even more explicit the Legislature's intent to preclude
underage imbibers from recovering damages for their own
injuries. [*Ante*, p 359, n 18.]

Before the enactment of 1972 PA 196, adding the word "visibly"
before "intoxicated person," there clearly was no need to show that a
minor to whom a sale was made was visibly intoxicated. The addition
of the words "minor or" by 1986 PA 176 may have been to make clear
that in adding the word "visibly" the Legislature did not intend to
require that the plaintiff establish that a minor whose intoxication
caused his injury was visibly intoxicated at the time of the unlawful
sale.

[22] MCL 436.22; MSA 18.993.

[23] *Brooks v Cook*, 44 Mich 617, 619; 7 NW 216 (1880).

[24] *Ante*, p 359.

It is the primary responsibility of the drinker, adult or minor, to refrain from libation short of intoxication. It is thus understandable that the Legislature would not provide a § 22 dramshop remedy against a tavern for an intoxicated adult or affirmatively provide, as an exception, a dramshop remedy for a minor who becomes intoxicated.

While an intoxicated minor or adult may not recover against the tavern for injuries suffered in consequence of his own excessive drinking, he may recover against the tavern for injury suffered as a result of the excessive drinking of another. A person is not barred by the structure of the act from maintaining an action where another drinker is involved simply because he could not maintain an action against the tavern if he was the only drinker involved in his injury. *Heikkala v Isaacson, supra.*

If two persons become visibly intoxicated at a tavern at opposite ends of the bar and get together, say, as they are finishing their last drink at closing time, and drive off together, and an accident occurs, the visibly intoxicated passenger can maintain a dramshop action against the tavern for injuries caused by the sales to the visibly intoxicated driver. *Heikkala v Isaacson, supra.* Similarly, if the two drinkers meet and drink side by side at the bar and each pays his own bill, the result should it seems be the same, neither drinker having furnished liquor to the other.[25]

An adult passenger who furnishes liquor to the driver is barred, however, under the noninnocent party doctrine from maintaining a dramshop action even if he does not drink and is not himself intoxicated. It is thus clear that the basis or

---

[25] See *Plamondon v Matthews,* 148 Mich App 737, 741; 385 NW2d 273 (1985); *Arciero v Wicks,* 150 Mich App 522, 527; 389 NW2d 116 (1986).

rationale of the noninnocent party doctrine is not the failure of the Legislature to provide a § 22 dramshop remedy to a person who becomes intoxicated.

Accordingly, the noninnocent party doctrine need not, because of the structure of the dramshop act in failing to provide a remedy where the only drinker is the plaintiff himself, be applied when another drinker is involved in plaintiff's injury without regard to other policies set forth in the act. In failing to provide a dramshop remedy to an intoxicated minor where he is the only drinker involved in his injury, the Legislature did not send a signal regarding its intention where the minor, who may not himself have become intoxicated,[26] contributed to the intoxication of the person who, together with the tavern, by their concurrent acts caused his injury.

Other policies set forth in the act should be considered in deciding whether the Legislature intended that the judicial gloss on the dramshop remedy—barring a dramshop remedy where an adult, deemed as a matter of law to have reached the age of discretion in respect to alcoholic beverages, participates in furnishing liquor to the person who together with the tavern caused his injury —also bars a dramshop remedy where a minor, deemed as a matter of law *not* to have reached the age of discretion in respect to alcoholic beverages, so participated in the intoxication of the person who together with the tavern caused his injury.

B

In *Longstreth v Gensel,* 423 Mich 675; 377 NW2d 804 (1985), this Court held, in a case where

---

[26] It appears from deposition testimony that Craig also became intoxicated.

*a minor had become intoxicated,* that the Legislature intended that such a minor or his estate may bring an action against a social host for violation of § 33 of the liquor law[27] barring the furnishing of alcoholic beverages to a minor. In so holding, the Court in effect recognized that the legislative failure to provide a § 22 dramshop remedy against a tavern did not mean that a § 33 remedy had not been provided, at least against a social host. The Court reserved the question whether a § 33 remedy was provided against a tavern[28] despite prior holdings of this Court,[29] now codified,[30] that the § 22 remedy was the exclusive remedy against a tavern.

Logical symmetry is not the lodestar of statutory construction. The Legislature often makes debatable distinctions, drawing what to some may seem to be an illogical and somewhat arbitrary line classifying persons within and without the ambit of remedial legislation.

## VI

The liquor law, enacted in 1933 following the repeal of prohibition, barred the selling of alcoholic liquor to minors.[31] That statement of public policy was set forth in pre-Prohibition legislation[32] and has been carried forward with various amend-

---

[27] MCL 436.33; MSA 18.1004.

[28] This Court has not yet chosen to address a licensee's responsibility to an intoxicated minor. [*Longstreth, supra,* p 696.]

[29] See n 12.

[30] This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor. [MCL 436.22(11); MSA 18.993(11).]

[31] 1933 (Ex Sess) PA 8, § 33.

[32] 1887 PA 313.

ments to the present.[33] Section 22 (dramshop act), modeled on pre-Prohibition legislation,[34] was enacted in 1937,[35] and has also been carried forward with various amendments to the present.[36]

The precise basis or rationale of the noninnocent party doctrine, as applied to adults, is unclear. This Court has said that an adult who purchased liquor for a minor cannot recover for "consequences for which he was directly and actively responsible"[37] and that an adult who matched coins with and purchased liquor for another adult he knew was intoxicated is not "an innocent person entitled to recover under the act."[38] Neither rationale can appropriately be applied where a minor furnishes liquor to the driver because the Legislature, in barring in § 33 sale or furnishing of alcoholic beverages to minors, indicated that they are as a matter of law deemed to be so "innocent" regarding alcoholic beverages that no one (*Longstreth, supra*) may lawfully sell or furnish alcoholic beverages to them and sought to protect them from the "consequences" of excessive use of alcoholic beverages.

The Legislature barred the selling of liquor to minors because it was thought that minors have not reached the age of discretion regarding alcoholic beverages. The Legislature said in effect that adults are deemed, as a matter of law, to have reached the age of discretion regarding alcoholic beverages and that minors are deemed, as a matter of law, not to have reached the age of discretion and thus minors are legislatively deemed "innocent" regarding alcoholic beverages.

---

[33] MCL 436.33; MSA 18.1004.

[34] 1877 PA 193; 1887 PA 313.

[35] 1937 PA 281; 1948 CL 436.22.

[36] MCL 436.22; MSA 18.993.

[37] *Morton v Roth,* n 3 *supra,* p 202.

[38] *Kangas v Suchorski,* n 12 *supra,* p 401.

The legislative prohibition of sales to minors sought to protect not only third persons, but also the minor from the consequences of youthful indiscretion and folly in the use of alcoholic beverages. It is inconsistent with that legislative judgment to apply the noninnocent party doctrine, developed in cases of adults (who the Legislature has said, in effect, have reached the age of discretion regarding alcoholic beverages) in a case where the tavern sells intoxicating beverages to a minor, deemed innocent as a matter of law, in violation of provisions of the act—barring all sales to minors[39]— separate and apart from those barring sales to a visibly intoxicated person.

It is contrary to the spirit of this legislation to permit the tavern to avail itself as a defense of the very consequences of the indiscretion of the minor respecting alcoholic beverages that the Legislature sought to obviate by the legislative prohibition of all sales to minors.[40]

VII

In sum, there is nothing in § 22, the dramshop act, bearing on whether the judicial construction of that legislation known as the noninnocent party doctrine should apply to a minor as well as an adult—§ 22, in failing to provide a remedy to an intoxicated person, does not indicate what the rule should be when the injured person is seeking to recover for injuries resulting from an unlawful sale to another person to whose drinking he contributed.

Section 33, barring all sales to a minor, intro-

---

[39] MCL 436.33; MSA 18.1004.

[40] An adult who furnishes liquor to another person might not personally be visibly intoxicated, and thus the tavern may have lawfully sold intoxicating liquor to that person. A tavern may not, however, sell to a minor without violating the act.

duces another legislative policy which justifies, indeed requires, distinguishing between a minor and an adult who contributed, together with the tavern, to the drinking of the person whose driving caused the minor's injury. In light of that declaration of legislative policy, this Court cannot appropriately apply the "consequences for which he was directly and actively responsible" and "noninnocent" rationales—stated in propounding the noninnocent party doctrine in actions brought by adults—in an action brought by a minor who, by reason of that declaration of legislative policy, is deemed as a matter of law to be so "innocent" regarding alcoholic beverages that no sale is to be made to him and who is to be thereby protected against "consequences" for which he would otherwise be responsible and for which, by reason of that declaration of legislative policy, the tavern, not the minor, is "directly and actively responsible."

We would hold, on the basis of § 33, barring all sales to a minor, that the judicially developed noninnocent party doctrine does not apply to a minor, and that a minor who participated, together with the tavern, in furnishing liquor to the intoxicated person may maintain an action against the tavern for injuries suffered as a result of an unlawful sale of intoxicating liquor by the tavern.

We would reverse and remand for trial.

Archer, J., concurred with Levin, J.