MARY McDONALD v. PATRICK CASEY.

*Liquor traffic—Sale to person in the habit of getting intoxicated—Action by wife.*

1. A saloon-keeper is not authorized to sell liquor for medicinal use any more than for other purposes, and he cannot excuse a sale made to a man known by him to be in the habit of becoming intoxicated, by the plea that he relied upon the statement of the purchaser that he wanted the liquor for medicine; the Court distinguishing this case from *People v. Hinchman,* 75 Mich. 587, where the defendant was a druggist.

2. On the trial of a suit brought by a wife against a saloon-keeper to recover damages occasioned by reason of the sale of liquor to her husband, the plaintiff denied that she ever consented to such sales during the time covered by her declaration, and the defendant denied that plaintiff ever forbade his selling liquor to her husband, as testified by her, and further testified that plaintiff told defendant several times to let her husband have liquor after defendant had refused so to do. And it is held that under such testimony the court was warranted in instructing the jury that the consent of the wife which would justify unlawful sales must cover the sales for which the action was brought.

Error to Jackson.  (Peck, J.)  Argued January 9, 1891.
Decided February 6, 1891.

Case.  Defendant brings error.  Affirmed.  The facts
are stated in the opinion.

*Thomas A. Wilson,* for appellant.

*Blair, Wilson & Blair,* for plaintiff.

MORSE, J.  This is an action of trespass on the case
brought in the Jackson circuit court by the plaintiff to
recover damages occasioned by the sale of liquor to her
husband by the defendant between the 1st day of Octo-
ber, 1887, and the 10th day of January, 1888.  She
recovered judgment for $350.

The declaration charges that the sales were illegal, in
that her husband, John McDonald, was a person in the
habit of getting intoxicated at the time the liquors were
sold to him, which fact was well known to defendant,
and that, on account of such sales, the said John
McDonald became intoxicated, and while in a state of
intoxication, induced by such liquors sold to him by
defendant, shot himself with a revolver, wounding and
disabling himself, and was thereby disabled and incapaci-
tated from furnishing said plaintiff and her children the
necessary support and maintenance which it was incum-
bent upon him to render, and, by reason of such intoxi-
cation, was discharged from his employment, whereby the
plaintiff lost and was deprived of her means of support
for herself and her children.

The evidence of the plaintiff tended to show that
McDonald came to Jackson in March, 1886.  Some six
months thereafter he moved into a house within a short
distance of the defendant's place of business, who kept a
grocery and saloon attached.  McDonald acquired the

habit of drinking soon after he came to Jackson, being a man of temperate habits before that time. The plaintiff testifies that she notified defendant not to sell her husband any liquor in the summer of 1887. She repeated the notice to him or his clerks twice during the fall. The defendant refused to quit furnishing liquor to McDonald, insisting that he had the lawful right to sell it to him. McDonald got most of his liquor at Casey's, and was frequently intoxicated, mostly evenings. He was working on the Fargo shoe contract at the prison, and his wife told Casey that he would be discharged from his work if he kept on drinking. He was discharged December 16, 1887. His wages were $15 per week. After his discharge he drank very hard, so much so that it affected his mind and nerves. On the afternoon of January 10, 1888, having been drinking in the forenoon, he got a quart bottle of brandy at Casey's, of Casey's wife, telling her that he wanted it for bowel complaint. He took the bottle home with him, and, after drinking about half of it, shot himself with a revolver. The ball entered the forehead on the left side, making an open scalp wound. It was some three months after the shooting before he was able to go to work, and some five months before he found employment.

The defendant admitted that McDonald was in the habit of getting intoxicated, but claimed he never sold him liquor except when he was sober; and that he did this with the consent and at the request of the plaintiff, who said her husband would have liquor any way, and she would rather he would get it at Casey's than anywhere else. The defendant furnished the family of McDonald with groceries, and beer and liquor were charged on the same pass-book as the groceries. Defendant showed that he frequently refused McDonald liquor. His wife admitted letting McDonald have the bottle of brandy, but claimed

that he wanted it for his child that was sick, and that the doctor had ordered it.

Twenty-eight errors are assigned. We shall discuss those only that we deem of sufficient importance to be noticed in the reports. Those not discussed have been considered, however, and found not tenable as errors. We find no errors in the admission or rejection of testimony to the defendant's prejudice.

The court instructed the jury that if McDonald was in the habit of getting intoxicated, and Mrs. Casey knew it, the sale of the bottle of brandy to him was unlawful, even though he said to her that the doctor ordered him to get it for sickness in his family. This is assigned as error, in connection with the refusal of the court to charge that if the jury found that plaintiff sent her husband for the brandy for the sick children, and he stated to Mrs. Casey that he wanted it for that purpose, the plaintiff could not recover for any loss or damage resulting from the drinking of it. Whether or not Mrs. Casey sold this brandy to McDonald in the good-faith belief that he wanted it for his sick children was immaterial, if she knew he was in the habit of getting intoxicated. The case of *People v. Hinchman*, 75 Mich. 590, is not applicable here. Hinchman was a druggist, authorized to sell liquor for medicinal purposes; and we held that he had a right to rely upon the statement made by the purchaser as to the purpose for which the liquor was to be used, if he in good faith believed such statement. But a saloon-keeper is not authorized to sell liquor for medicinal use any more than he is for other purposes, and, where he knows that a man is in the habit of getting intoxicated, and a sale to him is therefore unlawful, he cannot excuse such sale by the plea that he relied upon the statement that it was wanted as a medicine. The court was also requested to charge the jury that, if the

plaintiff aided her husband to open the bottle of brandy voluntarily, she could not recover for any damages caused by the drinking of it. This the court modified, by inserting "knowing he was going to drink some of it, or encouraged him to drink it." There was no error in such modification.

The case was fairly and clearly put to the jury in this: That the burden of proof was upon the plaintiff to show that she never gave her consent to the sale of liquors to her husband, and, if she did give such consent, she could not recover for any sales made under such consent. But it is claimed by defendant's counsel that the jury were misled by the statement of the court in such charge, that the consent to justify unlawful sales must cover times and sales for which the action was brought, and if the consent was for or limited to different sales, to be made at a time previous to and other than the sales for which recovery was sought, such consent would afford no justification; that there was no testimony in the case justifying such a statement; and that the jury might have got the impression that there was a doubt . in the mind of the court as to whether such consent covered the period of the declaration. There was a general denial on the part of plaintiff that she ever consented that liquors might be sold to her husband during the time laid in the declaration, and also a general denial by defendant that plaintiff ever forbade his selling liquor to McDonald. There was also testimony showing beer and whisky charged upon the pass-book for groceries, which the plaintiff used with her husband in trading with Casey. She testified to forbidding Casey selling liquor to McDonald several times, and Casey swears that she told him several times, after he had refused McDonald liquor, to let him have it, as he would get it down town if he did not get it at Casey's. Under this testimony, each denying the evi-

dence of the other, the court was justified in the state-
ment. The jury might have found that at some times
she consented to her husband's getting drink at Casey's,
and yet found that, when he was on his drinking spree
before he was discharged, plaintiff forbade the sale of any
more liquor to him, and warned Casey that selling him
more would result in his discharge from employment; and
there was testimony, if believed, to justify such findings.

A great deal of fault is found with the charge of the
court. We are not, however, cited to any positive error
in his statement of the law, but the burden of the com-
plaint seems to be that the court in some respects did
not clearly enough apply the law to the facts, and in
other parts of the charge he went too much into detail
in such application; and the counsel for the defendant,
after making one of these objections, says in his brief:

"Had the charge been to a jury of lawyers, it might
not be subject to this criticism, but to a jury of laymen,
possibly prejudiced more or less against the business of
selling intoxicating drinks, it was not sufficiently guarded
to protect the rights of defendant."

We think the instructions to the jury, while dealing
with more issues than was perhaps necessary, were
unusually clear and correct. We fail to notice where the
defendant has been injured by this judgment of $350
against him. The defendant admitted that he knew
McDonald was in the habit of getting intoxicated, and
yet he kept on selling him liquor whenever he found him
sober. Every glass sold to him under these circumstances
was unlawful, and a damage to the wife. His only
defense in this civil action (and he could have had none
in a criminal suit) was that the wife had consented to
the sales. The jury found against him on this point, and
not without reason. The verdict cannot be said to have
shown prejudice. It was not disputed that McDonald

had employment at $15 per week, which he lost by drunkenness caused by liquor obtained in part at Casey's. Liquor caused him to shoot himself, which laid him up for three months longer. Casey's own evidence shows that McDonald supported his family, and bought his groceries of him, while he was at work. It does not look to us, upon a careful examination of the whole record, that the jury could have been very much prejudiced against the sale of liquor, considering the amount of their verdict, and we fail to find any action on the part of the trial judge to the prejudice of the defendant.

The judgment is affirmed, with costs.

The other Justices concurred