LARROW v MILLER

Docket No. 168264. Submitted December 12, 1995, at Detroit. Decided April 16, 1996, at 9:00 A.M.

Janinia R. Larrow, for herself and as personal representative of the estate of Timothy L. Larrow, and Arnold A. Larrow brought an action in the Monroe Circuit Court against Richard E. Miller; J & C Fowler, Inc., doing business as Connie's Corral; Annette S. Johnson, doing business as Dundee Bar & Lounge; and Frank K. Breitner, doing business as Town Tavern, alleging that the last three defendants were liable under the dramshop act, MCL 436.22; MSA 18.993, for the death of the decedent because they served alcoholic beverages to a visibly intoxicated Miller, who, with the decedent as a passenger, thereafter drove his truck into a train, causing the decedent's death. The court, William F. LaVoy, J., granted summary disposition for the dramshop operators, ruling that recovery is barred under the noninnocent party doctrine because the decedent had accompanied and encouraged Miller during Miller's drinking spree and had contributed to Miller's intoxication by supplying two marijuana cigarettes smoked by both. The plaintiffs appealed.

The Court of Appeals *held*:

1. The noninnocent party doctrine bars one who actively participates in the intoxication of the alleged intoxicated person from recovery under the dramshop act. Mere presence, encouragement, or drinking with the alleged intoxicated person, without actually supplying the alleged intoxicated person with drinks or providing money for the purchase of liquor, does not bar recovery. In this case, the trial court erred in ruling that recovery was barred on the basis of the decedent's presence during and encouragement of Miller's drinking.

2. The Legislature, in statutes that proscribe drunken driving, has expressed an intent to consider intoxication by alcohol and intoxication by controlled substances to be the same. Accordingly, the noninnocent party doctrine applies to those who, like the decedent, actively participate in the intoxication of the alleged intoxicated person by supplying illegal drugs to the alleged intoxicated person.

Affirmed.

INTOXICATING LIQUORS — DRAMSHOP ACT — NONINNOCENT PARTIES — CONTROLLED SUBSTANCES.

>A person who supplies a controlled substance used by an intoxicated person actively participates in the intoxication of that person and is a noninnocent party who is precluded from recovering damages under the dramshop act (MCL 436.22; MSA 18.993).

*Sinas, Dramis, Brake, Boughton, McIntryre & Reisig, P.C.* (by *Michael E. Larkin*), for Janinia R. Larrow and Arnold A. Larrow.

*Morrison, Morrison & Finley* (by *Gregory W. Finley*), for J & C Fowler, Inc.

*Foster, Swift, Collins & Smith, P.C.* (by *Mark H. Canady* and *Paul J. Millenbach*), for Annette S. Johnson.

*Kallas & Henk, P.C.* (by *Scott L. Feuer*), for Frank K. Breitner.

Before: MURPHY, P.J., and CORRIGAN and P. D. HOUK,* JJ.

CORRIGAN, J. In this case of first impression involving the dramshop act, MCL 436.22; MSA 18.993, plaintiffs appeal as of right the orders granting summary disposition to defendants. We affirm, adopting the circuit court's holding that the noninnocent party doctrine bars recovery in dramshop actions by those who furnish illicit substances to the alleged intoxicated person (AIP).

Although defendants continue to deny certain of plaintiffs' allegations for purposes of appeal, we consider the facts in a light most favorable to the nonmovant plaintiffs on review de novo of motions under

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993).

On November 3, 1989, Richard E. Miller began drinking alcohol in his truck and at a friend's house, and then traveled to the Town Tavern, where he met Timothy Lee Larrow. By the time Miller left the Town Tavern, he had consumed between ten and twenty drinks in four hours. Miller and Larrow next went to the Dundee Bar, where Miller had one or two more drinks. At their next stop, Connie's Corral, Miller had two or three additional drinks. Some witnesses described Miller as "silly," "goofy," "staggering," and "whooping and hollering." Later that night, Larrow supplied and shared two marijuana cigarettes with Miller. Miller squarely acknowledged during his deposition that the marijuana helped to "kick in the buzz" that he had been experiencing from the alcoholic beverages.

In this inebriated condition, at 1:45 A.M. on November 4, 1989, Miller drove his pickup truck into the side of an oncoming train, killing Larrow, the front seat passenger. Blood testing after the accident placed Miller's blood alcohol level at 0.298 percent.[1]

Larrow's estate and parents sued Miller, the three taverns, and other persons not parties to this appeal. The taverns moved for summary disposition, arguing that suit was barred by the noninnocent party doctrine. Plaintiffs argued that the doctrine applies only to a plaintiff who supplies alcoholic beverages, and

---

[1] Defendants, however, deny that Miller was visibly intoxicated. They note that the blood test results would be inadmissible at any subsequent trial.

that it does not extend to one who shares illicit drugs. Plaintiffs also argued that if the doctrine applies to illicit drugs, a factual dispute exists about whether the small amount of marijuana Miller ingested contributed to his intoxication. The circuit court granted summary disposition to the taverns on the ground that the noninnocent party doctrine barred recovery.

### I. THE NONINNOCENT PARTY DOCTRINE

Several states recognize the "noninnocent party doctrine," a doctrine that bars one who actively participates in the intoxication of a tortfeasor from recovery under the dramshop act.[2] *Craig v Larson*, 432 Mich 346; 439 NW2d 899 (1989). The noninnocent party doctrine is not in itself a common-law principle, *id.* at 355, but rests instead on the judicial gloss that the Legislature could not have intended that one who actively contributes to an AIP's intoxication should be entitled to sue under the dramshop act. See *Morton v Roth*, 189 Mich 198, 202; 155 NW 459 (1915).[3]

Our Supreme Court first recognized the noninnocent party doctrine in the context of dramshop liability in *Brooks v Cook*, 44 Mich 617; 7 NW 216 (1880). In *Brooks*, the plaintiff became intoxicated at a tavern where someone picked his pocket. He sued the tavern because it had contributed to his loss by selling him

---

[2] MCL 436.22; MSA 18.993.

[3] See generally anno: *Third person's participating in or encouraging drinking as barring him from recovering under civil damage or similar acts*, 26 ALR3d 1112; anno: *Right to recover under civil damage or dramshop act for death of intoxicated person*, 64 ALR2d 705; anno: *Common-law right of action for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drug to another*, 97 ALR3d 528. The last annotation deals only with common-law rights. As noted above, in Michigan, the principle is not grounded in the common law.

the liquor that led to his inebriation. Justice COOLEY wrote that the dramshop statute anticipated three persons concerned in a dramshop action: the person selling, giving, or furnishing alcohol, the person receiving alcohol and causing an injury, and the injured person. *Id.* at 618. The Supreme Court concluded that had the Legislature intended the intoxicated person to have a cause of action, it would have included that person among those enumerated persons entitled to sue. *Id.* at 618-619. Thus, the statute does not confer on the intoxicated person a right of action against the seller of the liquor.

In *Rosecrants v Shoemaker*, 60 Mich 4; 26 NW 794 (1886), our Supreme Court expanded the doctrine by ruling that a wife who authorized the sale of intoxicating liquor to her husband and who herself procured it for him could not sue the tavern when her intoxicated spouse was subsequently killed by a train. The Court held, "it is evident that she cannot complain of any evil which she has herself caused, and that; if she encouraged or requested the sale of liquor to her husband, she does not stand on the footing of an innocent injured party." *Id.* at 7. The defendants were entitled to have the jury instructed that the plaintiff could not recover damages if she authorized the defendants to furnish liquor to her husband, and that the plaintiff's past habit of purchasing liquor for her husband could be considered as evidence of her authorization. See also *McDonald v Casey*, 84 Mich 505; 47 NW 1104 (1891).

The doctrine was well established by the time of *Morton v Roth, supra.* In that case, our Supreme Court barred suit by the plaintiff, a twenty-two-year-old acquaintance of the AIP. The plaintiff furnished

liquor to the AIP, a minor, at eight saloons. The plaintiff and the AIP then stole a car, went joyriding, and were involved in an accident. The Court refused to overturn a directed verdict for the defendant tavern owner in the plaintiff's suit for damages for injuries sustained in the accident because the plaintiff was "seeking to recoup himself, in a pecuniary way, for consequences for which he was directly and actively responsible." 189 Mich 202.

In this case, defendants reiterate their successful argument below that recovery is barred as a matter of law because the decedent *encouraged* Miller's drinking, even though he did not actually purchase drinks for Miller. Defendants alternatively argue that the noninnocent party doctrine should be extended to one who contributes to the AIP's intoxication by furnishing illegal drugs. Defendants argue that the noninnocent party doctrine focuses on wrongdoing and illegal conduct, and that one who supplies illegal drugs should be barred from suing, just as one who supplies intoxicating liquor may not recover. We agree with the latter argument, as indicated below.

Larrow's mere presence as a bystander would not support judgment as a matter of law in defendants' favor. Defendants argue that Larrow contributed to Miller's alcoholic intoxication by accompanying him on his drinking spree, thereby giving him either explicit or implied encouragement. We held in *Todd v Biglow*, 51 Mich App 346, 352; 214 NW2d 733 (1974), that although such involvement creates a factual question, it does not support judgment as a matter of law. The noninnocent party doctrine contemplates "active" participation in the AIP's drinking. Mere presence, encouragement, or drinking with the AIP, with-

out actually supplying the AIP with drinks or providing money for the purchase of liquor, will not support summary disposition. Cf. *Plamondon v Matthews*, 148 Mich App 737, 741; 385 NW2d 273 (1985) (the plaintiff found noninnocent as a matter of law when he and the AIP placed their money in the middle of a table and allowed a waitress to take payment from the pile); *Barrett v Campbell*, 131 Mich App 552, 556; 345 NW2d 614 (1983) (the plaintiff and others bought drinks with the AIP in "rounds," where each person consumed and purchased a per capita share of drinks, held to have actively participated in causing the tortfeasor's intoxication and thus barred from maintaining a dramshop action); *Kangas v Suchorski*, 372 Mich 396; 126 NW2d 803 (1964) (the plaintiff, who matched coins with the AIP to determine who would pay for drinks, held to have actively participated in creating the intoxication and thus was barred from suit).

The circuit court erred in ruling that decedent's mere presence supported summary disposition for defendants as a matter of law. A factual issue remained under *Todd* about the level of Larrow's participation in Miller's intoxication. Nonetheless, the court correctly granted summary disposition on the basis of defendants' alternative arguments.

## II. ILLEGAL DRUGS

No Michigan case has extended the noninnocent party doctrine to those who supply illegal drugs to an AIP. Nevertheless, the rationale underlying the doctrine warrants its extension to such circumstances. Plaintiffs argue that the doctrine should not be extended because "intoxication" means intoxication

through alcohol, not illegal drugs. Defendants counter that because the Michigan Vehicle Code, MCL 257.1 *et seq.*; MSA 9.1801 *et seq.*, has defined "intoxication" to include drugs, the legislative definition should control in these circumstances. We agree with defendants.

Despite its title, the statute banning "driving while intoxicated" does not itself define the term "intoxication." Indeed, "intoxication" is specifically mentioned in only three subsections that prohibit driving while "under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance." MCL 257.625(1)(a), (2), (3); MSA 9.2325(1)(a), (2), (3). The statute links "intoxicating" with "liquor," but it arguably does not link "intoxicating" with "a controlled substance." Nonetheless, the legislation reflects an obvious intent to treat the consequences of driving under the influence of alcohol or drugs in like fashion.

The Oregon Court of Appeals linked the term "intoxicating" with the term "controlled substance" in deciding a similar case under the Oregon "driving while impaired" statute. *Blunt v Bocci*, 74 Or App 697; 704 P2d 534 (1985), involved the Oregon dramshop act, which, like the one in Michigan, provides for dramshop liability when a bar serves a "visibly intoxicated" patron. The Oregon statute also failed to specifically define "intoxicated." The AIP in *Blunt*, who had been smoking marijuana and drinking liquor, caused an accident. The bartender thought that the AIP seemed under the influence of some substance when served, although the bartender did not know whether the substance was alcohol or drugs. The Court looked at Oregon's drunken driving statute,

which prohibited driving while "under the influence of intoxicating liquor *or* a controlled substance" and driving while "under the influence of intoxicating liquor *and* a controlled substance." Or Rev Stat 487.540(1) (emphasis added), quoted at 74 Or App 702. The Oregon statute, like the Michigan statute, does not expressly link the word "intoxicating" to "controlled substance," because it injects the word "a" before "controlled substance." Nonetheless, the court upheld a jury instruction that stated that "visibly intoxicated" included "intoxication by alcohol or drugs or a combination thereof."

The bar in *Blunt* argued that it would be unfair to require bartenders to determine the effects of illegal drugs, an area outside their specialty, but the court concluded that the effects of alcohol and drugs are often similar and it would not place a "severe" burden to impose such a duty. The court concluded that the legislature intended to address the problems created by drivers who are intoxicated, whether from alcohol, illegal drugs, or both. Thus, the Oregon court interpreted the drunken driving statute in a manner consistent with the apparent legislative intent, and employed that interpretation in the dramshop setting. We find Oregon's approach persuasive.

In the criminal law context, this Court has defined "intoxication" to mean a "disturbance of mental or physical capacities resulting from the introduction of *any* substance into the body." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992) (emphasis added), quoting *People v Low*, 732 P2d 622, 627 (Colo, 1987). That broad definition obviously includes illegal drugs.

The noninnocent party doctrine primarily focuses on the wrongdoing of the injured party and the manner in which that party caused or contributed to his own injuries. That appellate decisions have previously decided cases involving those who supplied intoxicating liquor, rather than illegal drugs, is a mere fortuity. The doctrine is equally applicable to one who contributes to his own injuries by supplying illicit drugs.

Our state's public policy bars action by one who contributes to a tortfeasor's intoxication by supplying a legal substance, alcohol. To permit a dramshop action by or on behalf of one who supplies or shares illegal drugs would not further that public policy. We cannot conclude that the Legislature intended to create a statutory cause of action in these circumstances.

We need not consider today whether one who has lawfully and in good faith supplied prescription drugs is similarly barred from recovery.[4] The noninnocent party doctrine focuses on wrongdoing and illegal behavior.

---

[4] The Iowa Supreme Court confronted a comparable situation in an early case, *Kearney v Fitzgerald*, 43 Iowa 580 (1876). In that case, the husband went to a saloon, became intoxicated, and returned to beat his wife. The wife had contributed to her husband's intemperate habits by supplying alcohol for medicinal purposes. The wife sued under Iowa's dramshop act, and the saloon argued that she had sanctioned her husband's drinking and therefore was not entitled to redress because she was not an innocent sufferer. The Supreme Court held that the medicinal use was a good-faith motive and permitted the issue to go to the jury. 43 Iowa 585-586.

Our Court in *Caulley, supra,* addressed whether involuntary intoxication as a criminal defense can be supported by the unexpected side effects of a medically prescribed drug. 197 Mich App 188. See also *People v Wilkins*, 184 Mich App 443; 459 NW2d 57 (1990) (involuntary intoxication through combination of alcohol and prescription medication is within the ambit of the insanity defense).

### III. CAUSAL CONNECTION

Plaintiffs next argue that because no evidence established that the small amount of marijuana Miller ingested ("two or three hits") had any relation to his intoxication, a question of fact remains about the causal relationship of the decedent's actions. We reject plaintiffs' claim. Miller testified at his deposition that he and Larrow shared the marijuana so that Miller might "kick in the buzz" he had acquired from drinking. As a matter of law, Miller's testimony established that decedent Larrow actively contributed to Miller's intoxication. Even a slight amount of participation will bar recovery, as long as the participation is "active." *Barrett v Campbell, supra* at 557. Concepts of comparative negligence do not apply in this context. *Craig v Larson, supra.* Plaintiffs' dramshop action is barred as a matter of law.

*Arciero v Wicks,* 150 Mich App 522; 389 NW2d 116 (1986), cited by plaintiffs, does not compel a contrary result. In *Arciero,* this Court held that buying drinks for an AIP bars an action as a matter of law only when the AIP is already visibly intoxicated. The essential foundation of plaintiffs' complaint against the taverns is that Miller was visibly intoxicated when he was served at all three bars (in Larrow's presence). To suggest that Miller was not visibly intoxicated when Larrow shared marijuana with him is inconsistent with plaintiffs' claims.

Because the decedent actively participated, as a matter of law, in Miller's intoxication by supplying a small quantity of marijuana to him, recovery is barred. Plaintiffs have no legal right to test the degree

to which their decedent's illegal behavior contributed to this tragedy.

Affirmed.